## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JOSEPH RISH JR., | Case No.: |
| Plaintiff, | **COMPLAINT** |
| vs. | **DEMAND FOR JURY TRIAL** |
| CAS MEDICAL SYSTEMS, INC., ALAN W. MILINAZZO, PAUL A. MOLLOY, THOMAS S. PATTON, GREGORY P. RAINEY, JAMES E. THOMAS, KATHLEEN A. TUNE, and KENNETH R. WEISSHAAR, | |
| Defendants. | |

## COMPLAINT FOR VIOLATION OF SECTIONS 14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff Joseph Rish Jr. ("Plaintiff") brings this suit for violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934. In support of this complaint, Plaintiff, by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

## INTRODUCTION

1.      Plaintiff brings this action against CAS Medical Systems, Inc. ("CASMED" or the "Company"), and the Company's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below), for violations of Sections 20(a) and 14(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 14a-9 promulgated thereunder ("Rule 14a-9"). Specifically, Defendants solicit stockholder approval in connection with the sale of the Company to Edwards Lifesciences Corporation ("Edwards"), through a proxy statement that omits material facts necessary to make the statements therein not false or

misleading.[1] Stockholders require this material information to decide whether to vote in favor of the proposed transaction.

2.      On February 11, 2019, the Company announced that it had entered into an agreement and plan of merger (the "Merger Agreement"), by which Edwards will acquire all of the outstanding shares of CASMED in an in an all-cash transaction. Under the terms of the Merger Agreement, CASMED's stockholders will receive $2.45 per share (the "Merger Consideration") for each share of CAS Medical common stock they hold (the "Proposed Transaction"). The Proposed Transaction is valued at approximately $100 million.

3.      On March 1, 2019, Defendants issued a materially incomplete and misleading Proxy Statement Pursuant to Section 14(a) of the Exchange Act (the "Preliminary Proxy Statement") filed with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction. The Preliminary Proxy Statement is materially misleading in that it fails to provide adequate disclosure of material information related to the Proposed Transaction.

4.      Specifically, the Proxy Statement fails to disclose material information concerning the Company's financial projections, the background of the sale process, and potential conflicts of interest involving CASMED's financial advisor William Blair & Company L.L.C. ("William Blair"). The omission of this material information renders the Proxy Statement materially incomplete and misleading in violation of §§ 14(a) and 20(a) of the Exchange Act. On March 13, 2019, the Company filed a Definitive Proxy Statement with the SEC (the "Proxy Statement"), which continued to omit material information concerning the Company's financial

---

[1] The Company and the Individual Defendants are referred to herein as "Defendants."

projections, the background of the sale process, and potential conflicts of interest involving CASMED's financial advisor William Blair.

5.      For these reasons and as set forth in detail herein, the Individual Defendants, and the Company, have violated federal securities laws. Plaintiff seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of these laws. Time is of the essence. The Proxy Statement notes that the special meeting of stockholders of CASMED will be held at CASMED's corporate offices located at 44 East Industrial Road, Branford, Connecticut 06405 at 10:00 a.m. Eastern Time on Thursday, April 18, 2019. Accordingly, judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331, pursuant to 15 U.S.C. § 78aa (federal question jurisdiction), as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder

7.      The Court has personal jurisdiction over each of the Defendants because each conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under § 27 of the Exchange Act, 15 U.S.C. §78aa, as well as pursuant to 28 U.S.C. § 1391, because CASMED is incorporated in this District, and Defendants have received substantial compensation by doing business in this District via CASMED.

## PARTIES

9.      Plaintiff is, and has been at all relevant times, the owner of shares of CASMED common stock.

10.     Defendant Thomas M. Patton ("Patton") has served as a director of the company since 2010.

11.     Defendant Paul M. Molloy ("Molloy") has served as a director of the company since 2015.

12.     Defendant Alan W. Milinazzo ("Milinazzo") has served as a director of the company since 2015.

13.     Defendant Gregory P. Rainey ("Rainey") has served as a director of the company since 2010.

14.     Defendant James E. Thomas ("Thomas") has served as a director of the company since 2011.

15.     Defendant Kathleen A. Tune ("Tune") has served as a director of the company since 2011.

16.     Defendant Kenneth R. Weisshaar ("Weisshaar") has served as a director of the company since 2010.

17.     Defendants Weisshaar, Tune, Thomas, Rainey, Milinazzo, Molloy, and Patton, are collectively referred to as "Individual Defendants" and/or the "Board."

18.     Defendant CASMED designs, manufactures, and markets FORE-SIGHT Tissue Oximetry, the most accurate and precise tissue oximetry technology in the world. The FORE-SIGHT Cerebral Oximeters provide a highly accurate, non-invasive measurement of tissue oxygenation in the brain, providing clinicians with a superior and powerful tool to alert them to otherwise unrecognized and dangerous hypoxia, or low levels of oxygen, in the brain and other

tissue, thereby empowering them to improve patient care. The Company, incorporated in Delaware, is headquartered at 44 East Industrial Road, Branford, CT 06405. CASMED's common stock trades on the NASDAQ Capital Market under the symbol "CASM."

## OTHER RELEVANT ENTITIES

19.     Edwards is the global leader in patient-focused medical innovations for structural heart disease, as well as critical care and surgical monitoring. The Company is incorporated in Delaware and headquartered at One Edwards Way, Irvine CA 92614.

20.     Crown Merger Sub, Inc. is a Delaware corporation and a wholly owned subsidiary of Edwards. It was formed solely for the purpose of effecting the merger and the transactions contemplated by the merger agreement, and it has not engaged in any other business.

## FURTHER SUBSTANTIVE ALLEGATIONS

**The Merger Process**

21.     Beginning in early 2016, the CASMED board of directors determined that it would be advantageous to obtain the professional advisory services of an investment bank to formally explore market interest in an acquisition of, or a merger or other combination with, CASMED.

22.     To assist in this process, on April 1, 2016 CASMED engaged William Blair as a financial advisor. Immediately following its retention in April, William Blair contacted fifteen parties to discuss a strategic transaction. This initial outreach grew over the next two years. In fact, over the next two years, William Blair and CASMED management approached 38 potential counterparties (consisting of 37 strategic counterparties and 1 financial counterparty), engaged in discussions and due diligence with 19 potential counterparties, entered into 14 non-disclosure agreements, and ultimately received two bids to purchase CASMED.

23.     While the outreach and due diligence between CASMED and these 38 potential counterparties continued for over two years, it wasn't until October of 2018, that CASMED received its first indication of interest. On October 29, 2018, Edwards submitted to CASMED a written indication of interest that communicated its interest in acquiring CASMED for $2.25 per common share in an all cash transaction subject to certain conditions.

24.     Following the receipt of this offer, on October 31, 2018 CASMED's board of directors met to consider the offer. After reviewing the likelihood of other potential bidders emerging, the Board directed William Blair to conduct a market check by re-contacting a subset of the 38 companies that had been contacted previously, in order to refresh their knowledge of CASMED's performance and attempt to engage in substantive discussions to provide an alternative bid. Following this decision, the board of directors authorized William Blair to provide an oral counter offer of $3.00 per share to Edwards.

25.     On November 8, 2018, Edwards entered into a non-disclosure agreement with CASMED. Thereafter, and throughout the period from November until the execution of the definitive merger agreement in February 2019, CASMED cooperated in substantial due diligence activities by Edwards including a formal due diligence kickoff meeting with various Edwards team members in New York City on November 8, 2018.

26.     As part of William Blair's outreach to other companies, on November 2, 2018, William Blair contacted Company A, Company B and Company J again. On November 5, 2018, William Blair contacted Company Q and followed up with a packet of non-confidential information on CASMED. The following day, on November 6, 2018, William Blair contacted Company J and Company P again and provided them with a packet of non-confidential information on CASMED. Later that month, on November 15, 2018, William Blair contacted

Company C again and provided it with a packet of non-confidential information on CASMED. While Company A, Company B, Company C, and Company P ultimately indicated that they were officially not interested in bidding for CASMED, Company J expressed renewed interest in a strategic transaction.

27.     Furthermore, around that time, CASMED also began to explore interest from Company Q and, following execution of a non-disclosure agreement on December 6, 2018, on December 7, 2018, due diligence information was made available. The following month, on January 4, 2019, Company R entered into a non-disclosure agreement with CASMED.

28.     While this renewed market check was on-going, on January 10, 2019, after a brief call, Edwards submitted a revised written indication of interest to purchase CASMED for $2.35 per common share subject to certain conditions.

29.     Edwards' revised proposal was reviewed by the CASMED board on January 15, 2019. After reviewing the offer, as well as William Blair's ongoing discussions with three entities, Company J, Company Q and Company R, the Board directed William Blair to provide an oral counter-offer to Edwards of $2.65 per share and to continue discussions with the three other interested entities.

30.     On January 18, 2019, Edwards' communicated its "best and final" offer to CASMED, informing the Company that it was prepared to acquire CASMED for $2.45 per common share. While CASMED attempted to convince Edwards to revise upwards its proposal, these efforts were unsuccessful, but CASMED was able to negotiate changes to certain closing conditions contained in the draft merger agreement instead

31.     While these negotiations were on-going, Company J communicated to CASMED that it would be interested in acquiring CASMED, but would be willing to do so in the range of values between the equivalent of $0.81 and $1.32 per share.

32.     On February 6, 2019, CASMED held a board meeting to review the status of the negotiations with Company J and Edwards along with progress towards an acceptable merger agreement with Edwards. During this meeting, the board rejected the offer from Company J and authorized counsel to continue to negotiate the merger agreement with Edwards to seek to finalize the documentation.

33.     By February 11, 2019, these documents were finalized and board of directors of CASMED met that day to review and vote on the proposed transaction. During the board meeting, representatives from William Blair rendered to the board of directors its opinion that the $2.45 per share to be paid by Edwards to the CASMED stockholders is fair, from a financial point of view, to the CASMED stockholders. Following William Blair's opinion the board of directors unanimously (1) approved the execution, delivery, and performance of the merger agreement, (2) determined that entering into the merger agreement was in the best interests of CASMED and its stockholders, (3) declared the merger agreement and the merger advisable, and (4) subject to its fiduciary obligations, resolved to recommend that CASMED's stockholders adopt the merger agreement.

34.     The following day, prior to the opening of trading in the U.S. securities markets, CASMED and Edwards issued a joint press release announcing the transaction.

**The Merger Announcement**

35.     In a press release dated February 12, 2019, CASMED and Edwards issued a joint press release announcing the transaction.

36.     The press release states in pertinent part:

**IRVINE, Calif., and BRANFORD, Conn.,** Feb. 12, 2019 — Edwards Lifesciences Corporation (NYSE: EW), the global leader in patient-focused innovations for structural heart disease and critical care monitoring, today announced that it has entered into a definitive merger agreement to acquire CAS Medical Systems, Inc. (NASDAQ: CASM) (CASMED), a medical technology company dedicated to non-invasive monitoring of tissue oxygenation in the brain.

Edwards will acquire CASMED in an all-cash transaction for $2.45 per share of Common Stock, or an equity value of approximately $100 million.

"Cerebral oximetry technology provides an important indicator of oxygen levels in the brain, which can enhance clinician decision-making," said Katie Szyman, Edwards' corporate vice president, critical care. "We believe the incorporation of CASMED's FORE-SIGHT technology into Edwards' leading hemodynamic monitoring platform, along with Edwards' predictive analytics capability, will strengthen Edwards' leadership in smart monitoring technologies by providing physicians with a more comprehensive status of their surgical and critically ill patients."

Edwards has a pending 510(k) clearance in the United States for a smart cable and software module, which enables compatibility between CASMED's FORE-SIGHT sensor and the HemoSphere advanced hemodynamic monitoring platform. This technology was developed as a result of a collaboration between Edwards and CASMED, and received a CE Mark in Europe.

"We are pleased with this opportunity to bring together CASMED's expertise in brain and tissue oxygenation monitoring with Edwards' long history of leadership in hemodynamic monitoring," said Thomas M. Patton, president and CEO of CASMED. "We are confident that the combination of these technologies will result in an important measurement tool for physicians that can empower them to improve care."

As a condition to the closing of the transaction, each holder of CASMED's Series A Convertible Preferred Stock or Series A Exchangeable Preferred Stock will agree to convert such stock into shares of CASMED's Common Stock, and upon the closing, those holders will be entitled to receive the transaction consideration as holders of Common Stock. The acquisition is expected to close in the second quarter of 2019 and is subject to the satisfaction of customary closing conditions, including expiration or termination of the applicable waiting period under the Hart-Scott-Rodino Antitrust Improvements Act and approval by CASMED's stockholders.

XMS Capital Partners is serving as financial advisor to Edwards and Pepper Hamilton LLP is serving as Edwards' legal advisor. William Blair & Company L.L.C. is serving as financial advisor to CASMED and Wiggin and Dana LLP is serving as CASMED's legal advisor.

**The Proxy Statement Omits Material Information**

37.     On March 1, 2019, CASMED filed the Proxy Statement with the SEC. As alleged below and elsewhere herein, the Proxy Statement contains material misstatements and omissions of fact that render the statements made materially misleading, and must be cured to allow CASMED's stockholders to render an informed decision with respect to the Proposed Transaction.

38.     Specifically, as discussed below, the Proxy Statements omits material information regarding the Company's financial projections, he financial advisor's fairness opinion, the background of the transaction, and conflicts of interest concerning William Blair. This material information directly impacts the Company's expected future value as a standalone entity, and its omission renders the statements made materially misleading.  If disclosed, this information would significantly alter the total mix of information available to CASMED stockholders. Accordingly, CASMED stockholders are being asked to vote for the Proposed Transaction without all material information at their disposal.

*Material Omissions Concerning the Financial Projections:*

39.     With respect to CASMED's projected financial information, the Proxy Statement omits material information pertaining to the financial projections, and the valuation analyses performed by the Board's financial advisor in connection with the Proposed Transaction.

40.     William Blair reviewed certain internal business, operating and financial information and forecasts of the Company for the fiscal years December 31, 2019 through December 31, 2023 prepared by the senior management of the Company and provided to the financial advisor on February 4, 2019. The projections were provided to William Blair for William Blair's use and reliance in connection with its financial analyses and opinion.

41.     As discussed herein, the financial projections provided in the Proxy Statement do not provide the Company's stockholders with a materially complete understanding of the key assumptions and inputs. The projections provided in the Proxy Statement include: (i) Revenue; (ii) Gross Profit; (iii) EBITDA; (iv) Depreciation and Amortization; (v) EBIT; (vi) Capital Expenditures; and (x) Net Working Capital. However, they fail to include crucial financial projections used in the financial analyses conducted by William Blair.

42.     Notably missing from the prospective financial information provided in the Proxy Statement is projections for the Company's unlevered, after-tax free cash flows. Unlevered free cash flow is one of the most important metrics that a stockholder can use to ascertain the operating value of a company, and its use in a number of valuation analyses is central to valuing a company, especially in the context of a merger.  Here, CASMED's  projected unlevered future free cash flows for the fiscal years ending December 31, 2019 through December 31, 2023 were calculated and utilized by William Blair in its valuation calculations, specifically in the Discounted Cash Flow Analyses, and is thus material to the Company's shareholders. However, the Proxy Statement omits to disclose these most important values.

43.     In light of the fact that these projections were utilized by the Financial Advisors in their valuation calculations, including their discounted cash flow analyses, the Company's shareholders require this information to assess the fairness of the Merger Consideration and determine whether to vote in favor of the merger. Moreover, the omission of this information renders the Proxy Statement itself materially misleading because it tends to cause stockholders to lend undue credence to the fairness opinion and to over-value the Company due to the information vacuum.

***Material Omissions Concerning the Financial Advisor's Financial Analyses***

44.     The Proxy Statement describes the financial advisor's fairness opinion and the various valuation analyses the financial advisor performed in support of its respective opinions. However, the description of the financial advisors' respective fairness opinions and the underlying analyses omits key inputs and assumptions of CASMED underlying these analyses. Without this information, as described below, CASMED public stockholders are being misled as to what weight, if any, to place on the financial advisors' respective fairness opinion in determining whether to vote in favor of the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to CASMED stockholders.

45.     With respect to William Blair's Selected Precedent Transactions Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for the transactions observed by William Blair in the analysis.

46.     With respect to William Blair's Selected Publicly Traded Companies Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for the companies observed by William Blair in the analysis.

47.     With respect to William Blair's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the projected unlevered future free cash flows used by William Blair in the analysis; (ii) the terminal value of the Company; (iii) the individual inputs and assumptions underlying the discount rates ranging from 9.0% to 13.0% and the perpetuity growth rates ranging from 3.0% to 5.0%; (iv)William Blair's basis for using exit multiples ranging from 3.00x to 5.00x; (v) the Company's net debt; and (vi) the Company's total diluted outstanding shares.

48.     When a bankers' endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses are crucial to a fair presentation of the material facts. Furthermore, the disclosure of projected financial information provides stockholders with the best basis to project the future financial performance of a company, and allows stockholders to understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. This information is therefore material, and must be disclosed if CASMED stockholders are to make a fully informed decision. The omission of this information renders the statements made concerning the financial advisor's analyses and opinions materially misleading.

49.     Without such undisclosed information, CASMED stockholders cannot evaluate for themselves whether the financial analyses performed by the financial advisors were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can evaluate the extent to which financial advisors' opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

### *Material Omissions Concerning the Sale Process*

50.     With regard to the omission of material information relating to the sale process leading up to the Proposed Transaction, the Proxy Statement indicates that the Company entered into non-disclosure agreements with a number of potentially interested parties. Specifically, the Proxy Statement notes that the Company engaged in discussions and due diligence with 19 potential counterparties and entered into 14 non-disclosure agreements in connection with

discussions of a potential strategic transaction.   However, the nature and extent of these agreements are not disclosed in the Proxy Statement. Of particular importance to CASMED's stockholders, details regarding the terms of these non-disclosure agreements, including whether they contain standstill and/or "don't ask, don't waive" ("DADW") provisions that prohibit the counterparties from making an unsolicited superior proposal to CASMED are worryingly absent from the Proxy Statement.

51.     Here, the complete absence of information regarding terms of the non-disclosure agreements entered into by these entities is troubling. The Merger Agreement includes a "No Solicitation" provision that provides that CASMED "shall not . . . *fail to enforce to the fullest extent permitted under applicable law, any confidentiality or standstill or similar agreement* (except if the failure to grant a waiver or release would be inconsistent with the board of directors' fiduciary duties under applicable law)."  Merger Agreement at A-42. The presence of this language in the Merger Agreement clearly indicates that some and/or all of the non-disclosure agreements entered into between the interested entities and CASMED included presently undisclosed standstill provisions. However, without further information concerning the presence of standstill and/or DADW provisions, including whether those provisions had fallen away upon the execution of the Merger Agreement or are still in effect, CASMED stockholders are unable to properly evaluate the ability of these parties that earlier expressed interest in a potential strategic transaction to offer them a better deal.  Such undisclosed standstill provisions and/or DADW provisions would substantially hinder or even preclude counterparties from making a superior offer. Such information would be plainly material to CASMED's stockholders, and must be disclosed.

52.     Thus, the omission of this information renders the descriptions of the non-disclosure agreements that the Company entered into materially incomplete and misleading, as the failure to disclose the existence of standstill and DADW provisions creates the false impression that any of the parties who signed non-disclosure agreements have been free to make a superior proposal at all relevant times.  Clearly, any reasonable CASMED shareholder would deem the fact that the most likely potential topping bidders in the marketplace may be precluded from making a superior offer as significant information. Furthermore, any references to these interested entities walking away from the bidding process at various points of the sale process are also misleading, as they give the impression that these entities are no longer interested in a potential transaction with CASMED when it is entirely possible that their inability to re-engage is the result of contractual restrictions in the non-disclosure agreements.

### Material Omissions Concerning Conflicts of Interest

53.     Finally, the Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by the Company's financial advisor, William Blair.

54.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives. Item 1015 of Reg M-A plainly requires the disclosure of "any compensation received or to be received as a result of the relationship between" a financial advisor and the subject company or its affiliates. 17 C.F.R. § 229.1015(b)(4).  Where an investment bank is providing a fairness opinion that involves long-standing clients, it may be influenced to find a transaction fair to avoid irritating management and other corporate actors who stand to benefit from the transaction, as this will ensure future lucrative business.

15

55.     Here, the current disclosures, with respect to both CASMED and Edwards, are incomplete and must be corrected. Specifically, the Proxy Statement discloses no prior business or financial relationship between CASMED or Edwards and William Blair. A reasonable stockholder would want to know the important economic motivations of William Blair and the extent of the financial advisor's past relationships with CASMED and Edwards, and how that motivation could rationally lead William Blair to favor a deal.

56.     Accordingly, without further information regarding the relationships and past dealings of William Blair with CASMED and Edwards, the Company's stockholders are being misled into assuming that William Blair has no prior relationship and past dealings with either CASMED or Edwards that are not disclosed in the Proxy Statement.

57.     Based on the foregoing, the Proxy Statement violates Section 14(a) of the Exchange Act and applicable SEC regulations by materially misleading CASMED stockholders. CASMED public shareholders lack critical information necessary to evaluate the Proposed Transaction.

58.     As noted in the Proxy Statement, the special meeting of stockholders of CASMED will be held at 10:00 a.m. Eastern Time on Thursday, April 18, 2019.  Accordingly, Plaintiff seeks, among other things, the following relief: (i) enjoinment of the Proposed Transaction; or (ii) rescission of the Proposed Transaction in the event that it is consummated and to recover damages resulting from Defendants' misconduct.

## CLAIMS FOR RELIEF

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

59.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

60.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

61.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy statement communications with shareholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

62.     Furthermore, Item 1015 of Regulation M-A requires "[a]ny report, opinion or appraisal relating to the consideration or the fairness of the consideration to be offered to security holders or the fairness of the transaction to the issuer or affiliate or to security holders who are not affiliates" to "[d]escribe any material relationship that existed during the past two years or is mutually understood to be contemplated and any compensation received or to be received as a

result of the relationship between: (i) The outside party, its affiliates, and/or unaffiliated representative; and (ii) The subject company or its affiliates." 17 CFR 229.1015.

63.    The omission of information from a proxy statement will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

64.    Here, Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement, which fails to provide critical information regarding, amongst other things: (i) the background of the transaction; (ii) the potential conflicts of interest involving the financial advisor; (iii) the Company's financial projections; and (iii) the valuation analyses of the financial advisor.

65.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to CASMED common stockholders although they could have done so without extraordinary effort.

66.    The Individual Defendants knew or were negligent in not knowing that the Proxy Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and

recommend the Proposed Transaction; indeed, the Proxy Statement notes that the financial advisors reviewed and discussed their financial analyses with the Board, and further states that the Board considered the financial analyses provided by the financial advisors, as well as their respective fairness opinions and the assumptions made and matters considered in connection therewith.

67.     Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement. The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy Statement, rendering the sections of the Proxy Statement identified above to be materially incomplete and misleading. Indeed, the Individual Defendants were required to, separately, review the financial advisors' analyses in connection with their receipt of the fairness opinion, question the advisors as to the derivation of fairness, and be particularly attentive to the procedures followed in preparing the Proxy Statement, and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

68.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Individual Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

69.     CASMED is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy Statement.

70.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff and CASMED stockholders, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff and the CASMED stockholders have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and CASMED stockholders be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### Against the Individual Defendants for
### Violations of § 20(a) of the 1934 Act

71.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

72.     The Individual Defendants acted as controlling persons of CASMED within the meaning of Section 20(a) of the 1934 Act as alleged herein.  By virtue of their positions as officers and/or directors of CASMED and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

73.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after

these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

74.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, the Individual Defendants were directly involved in the creation of the Proxy Statement.

75.     The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

76.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

77.     As set forth above, the Individual Defendants had the ability to exercise control over, and did control, a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

a) declaring that the Proxy Statement is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

b) preliminarily and permanently, enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

c) to the extent the Proposed Transaction is consummated prior to the Court's entry of a final judgment, awarding Plaintiff rescissory damages against the Individual Defendants, including, but not limited to, pre-judgment and post-judgment interest;

d) awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

e) granting Plaintiff such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: March 21, 2018

**O'KELLY ERNST & JOYCE, LLC**

/s/ Ryan M. Ernst
Ryan M. Ernst (#4788)
901 N. Market St., Suite 1000
Wilmington, DE 19801
Telephone: (302) 778-4000
Facsimile: (302) 295-2873
Email: rernst@oelegal.com

*Attorneys for Plaintiff*

**LEVI & KORSINSKY LLP**
Donald J. Enright
Elizabeth K. Tripodi
1101 30th Street, N.W., Suite 115
Washington, D.C. 20007
Telephone: (202) 524-4290
Facsimile: (202) 333-2121
Email: denright@zlk.com
        etripodi@zlk.com

*Attorneys for Plaintiff*